IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

CHADRICK A. PHILLIPS                                                                        PLAINTIFF

        v.                          Civil No. 09-2154

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                                            DEFENDANT

**MEMORANDUM OPINION**

I.     **Factual and Procedural Background**

Plaintiff, Chadrick A. Phillips, appeals from the decision of the Commissioner of the Social Security Administration denying his applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"), pursuant to §§ 216(i) and 223 of Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423(d), and § 1602 of Title XVI, 42 U.S.C. § 1381a, respectively (collectively, "the Act").

Plaintiff protectively filed his DIB and SSI applications on April 5, 2007, alleging a disability onset date of March 28, 2007, due to injuries sustained in an automobile accident. Tr. 44-47, 51-53, 127. At the time of the onset date, Plaintiff was twenty-eight years old with a GED. Tr. 13, 57, 127, 136, 186. He has past relevant work as a laborer in a rock quarry, a tile setter, a stacker in a chicken plant, and a laborer in a framing business. Tr. 14-16, 57, 133-134, 138-145, 180.

Plaintiff's applications were denied at the initial and reconsideration levels. Tr. 59-64, 67-70, 102-108. At Plaintiff's request, an administrative hearing was held on September 17, 2008. Tr. 6-43. Plaintiff was present at this hearing and represented by counsel. The ALJ rendered an unfavorable decision on April 28, 2009, finding that Plaintiff was not disabled within the meaning

of the Act. Tr. 48-58. Subsequently, the Appeals Council denied Plaintiff's Request for Review on October 14, 2009, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-5. Plaintiff now seeks judicial review of that decision.

## II.     Medical History

On March 29, 2007, Plaintiff was involved in a severe motor vehicle accident, in which he sustained a C5-6 fracture/subluxation with resulting left upper extremity weakness and radiculopathy. Tr. 198-249. Plaintiff was taken to the emergency room at North Logan County Hospital and was subsequently transferred to Washington Regional Medical Center. Tr. 201-202. He was placed under the care of Larry Armstrong, D.O. Tr. 201-202. Plaintiff was hyperreflexic everywhere except for the left arm. Tr. 210. Strength was equal and normal except for in the left biceps area. Tr. 210. CT and MRI imaging confirmed cervical fractures at C5 and C6 with disc disruption and vertical fracture through the C5 vertebral body and fracture of the pedicle and facet on the left side with anterolisthesis. Tr. 205, 234-235, 237-238, 241-242. CT imaging of Plaintiff's pelvis and abdomen showed no gross abdominal or acute pelvic findings. Tr. 232-233. There was no evidence of lumbar spine or pelvic fracture. Tr. 233. CT imaging of Plaintiff's chest revealed no acute thoracic or mediastinal injuries, no pneumothoraces, and no effusions. Tr. 235-236. A CT of Plaintiff's brain revealed no acute findings. Tr. 233-234.

Plaintiff underwent an anterior cervical corpectomy at C5 with fusion of C4 through C6 with strut graft, Stryker cage filled with autograft and allograft, and anterior Stryker plating and screws. Tr. 199-200, 245. Plaintiff tolerated the procedure well. Tr. 206. X-rays showed good alignment. Tr. 239. On April 1, 2007, Plaintiff was discharged with prescriptions for Vicodin and Valium. Tr. 199-200.

Plaintiff followed up with Dr. Armstrong on three occasions. Tr. 250-264, 276-279. On May 7, 2007, Dr. Armstrong noted that Plaintiff's strength in his left lower extremity was improving. Tr. 254. Upon examination, he demonstrated four out of five strength levels in his left biceps and triceps, which was a "great improvement over where he was." Tr. 254. X-rays of Plaintiff's cervical spine revealed normal alignment on the lateral view, but the AP view suggested some mild, symmetrical widening of the lateral masses of C5 and C6. Tr. 252. Dr. Armstrong noted some slight anterolisthesis in the cage, but alignment was very good. Tr. 254. On July 2, 2007, Dr. Armstrong opined that Plaintiff still had significant weakness in his left upper extremity, with "a lot of atrophy" of the left biceps. Tr. 278. He stated that Plaintiff "is going to be disabled for at least two years due to the amount of weakness he has, and his difficulty from myelopathy from his spinal cord injury." Tr. 278. X-rays revealed good alignment, with no evidence of fracture, subluxation or hardware complication. Tr. 279. On October 3, 2007, Dr. Armstrong noted that although Plaintiff had made good progress, he continued to be disabled due to unimproved significant atrophy of the left upper extremity. Tr. 298. Cervical x-rays revealed no changes since July 2, 2007. Tr. 299.

On June 26, 2007, Stephen Whaley, an agency consultant, reviewed Plaintiff's medical records and determined that he could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, sit/stand/walk for a total of about six hours in an eight-hour workday, and push/pull an unlimited amount, except as shown for lift/carry. Tr. 268-275. He found no postural, manipulative, visual, communicative, or environmental limitations. Tr. 270-272. On September 5, 2007, Steve Owens, another agency consultant, reviewed Plaintiff's medical records and completed a Physical Residual Functional Capacity ("RFC") assessment. Tr. 285-292. Owens' medical assessment mirrored Whaley's earlier RFC assessment, but added that Plaintiff could only perform occasional

overhead work. Tr. 288.

On October 3, 2007, Dr. Armstrong completed a Medical Source Statement (Physical), in which he determined Plaintiff could occasionally lift/carry less than ten pounds and stand, walk, and sit for a total of two hours in an eight-hour workday. Tr. 295-297. He found that Plaintiff's ability to push/pull was limited in his upper extremities. Tr. 295. Additionally, he found that Plaintiff could kneel, crouch, and bend for less than two hours a day, but could never climb, balance, or squat. Tr. 296. He determined Plaintiff could reach, handle, finger, grip, and feel for less than two hours per workday. Tr. 296. He also noted that Plaintiff would require three or four bathroom breaks per workday and would need to lay down for a total of one hour in an eight-hour workday. Tr. 295-296. Environmentally, Dr. Armstrong found that Plaintiff must avoid all exposure to extreme cold and heat, wetness, humidity, noise, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards (machinery or heights). Tr. 297. Overall, he found that Plaintiff could only perform work activities for a total of one to two hours per day due to residual effects of his surgery, including atrophy and weakness in his left arm. Tr. 296-297.

On October 3, 2007, Dr. Armstrong also completed a Mental RFC assessment, in which he determined Plaintiff was markedly limited in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. Tr. 293-294.

On February 26, 2008, Plaintiff saw Joe Dunaway, D.O., with complaints of neck and back pain. Tr. 301. Upon examination, Plaintiff had muscle spasms and decreased range of motion in his neck and back, and decreased grip strength in his left hand. Tr. 301. Plaintiff was prescribed Norco and Norflex for pain management. Tr. 301.

On May 15, 2009, Plaintiff saw Billy Noel, APN, with complaints of back pain. Tr. 303-304. Noel noted pain and limited range of motion in Plaintiff's neck, tenderness and decreased range of motion in the dorsal and lumbar spine, and decreased range of motion in Plaintiff's extremities. Tr. 304. He noted that Plaintiff needed refills of Hydrocodone and Clonazepam, and instructed him to rest and avoid lifting and strenuous exercise. Tr. 304. He also counseled Plaintiff on depression. Tr. 304.

### III. Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The

Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

## IV.   Discussion

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since March 28, 2007, the alleged onset date. Tr. 53. At step two, the ALJ found that Plaintiff suffered from status post cervical fusion, which was considered a severe impairment under the Act. Tr. 53. At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 53. At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work where he could occasionally lift and carry ten pounds and frequently lift and carry less than ten pounds, sit for about six hours in an eight-hour workday, stand and walk for at least two hours in an eight-hour workday, frequently handle with his non-dominant hand, and occasionally drive. Tr. 54-57. After eliciting vocational expert testimony, the ALJ determined there were jobs existing in significant numbers in the national

economy that Plaintiff could perform, including representative jobs such as compact assembler, of which there are 63,308 jobs nationally and 1,111 jobs locally, charge account clerk, of which there are 277,963 jobs nationally and 2,178 jobs locally, and surveillance system monitor, of which there are 13,565 jobs nationally and 76 jobs locally. Tr. 57-58. Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined by the Act, at any point from March 28, 2007, through April 28, 2009. Tr. 58.

On appeal, Plaintiff contends the ALJ made an improper RFC assessment by dismissing the opinion of his treating physician, Dr. Armstrong. *See* Pl.'s Br. 8-12. We agree. A treating physician's opinion is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in a clamant's record. *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009); 20 C.F.R. § 404.1527(d)(2). The record must be evaluated as a whole to determine whether the treating physician's opinion should be controlling. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005). A treating physician's evaluation may be disregarded where other medical assessments "are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* at 920-21 (quoting *Prosch*, 201 F.3d at 1013). In any case, an ALJ must always "give good reasons" for the weight afforded to the treating physician's opinion. 20 C.F.R. § 404.1527(d)(2).

In making his determination, the ALJ dismissed the disabling RFC assessment completed by Dr. Armstrong, Plaintiff's surgeon. Tr. 55-56. In doing so, the ALJ stated:

> However, in this case, although Dr. Armstrong stated that the claimant is "disabled," it is not clear that the doctor was familiar with the definition of "disability" contained in the Social Security Act and regulations. Specifically, it is *possible* that the doctor was referring solely to an inability to perform the claimant's past work, which is

>consistent with the conclusions reached in this decision. In addition, the severe work limitations imposed by Dr. Armstrong appear to be based substantially upon the subjective report of symptoms and limitations provided by the claimant.

Tr. 56 (emphasis added). The ultimate issue of disability is one reserved to the Commissioner. *Brown v. Astrue*, 611 F.3d 941, 952 (8th Cir. 2010); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("treating physicians' opinions are not medical opinions that should be credited when they simply state that a claimant can not be gainfully employed"). In this instance, however, Dr. Armstrong's assessment is not merely a conclusory medical opinion. Although Dr. Armstrong noted on two occasions that Plaintiff was "disabled," he also completed a detailed Physical RFC assessment, in which he specifically listed Plaintiff's exertional impairments and attributed them to atrophy and strength loss in the left upper extremity. Tr. 278, 295-298. Moreover, contrary to the ALJ's assertion, Dr. Armstrong's opinion is consistent with his objective findings. He continually noted significant atrophy in Plaintiff's left arm, which failed to improve with treatment. Tr. 278, 298. As such, we disagree with the ALJ's conclusion that Dr. Armstrong based his opinion solely on Plaintiff's subjective complaints. Tr. 56.

Additionally, the ALJ's conclusion that Dr. Armstrong *possibly* meant only to exclude Plaintiff's past work is troubling. If there was any ambiguity, the ALJ had a duty to contact Dr. Armstrong and seek clarification. *See* 20 C.F.R. § 404.1512(e) (when evidence from a treating physician is inadequate to determine whether a claimant is disabled, we will seek additional evidence or clarification). Dr. Armstrong is the only treating physician who completed an RFC assessment. The only other RFC assessment was completed by a non-treating, non-examining agency physician. *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) ("The assessment of a doctor who evaluates a claimant once or not at all does not usually constitute substantial evidence."). Additionally, Dr.

Armstrong was the only physician to follow Plaintiff throughout his surgery and recovery phase, which placed him in the best position to assess Plaintiff's limitations. For these reasons, the ALJ did not give adequate reasons for dismissing Dr. Armstrong's opinion. As such, we believe further development is necessary to determine the ultimate issue of Plaintiff's disability.

We find that substantial evidence does not support the ALJ's RFC assessment. Upon remand, the ALJ should re-contact Dr. Armstrong to seek clarification of his findings and should give specific reasons for the weight attributed to his opinion. If Dr. Armstrong cannot be reached, then Plaintiff should be sent for a consultative evaluation.

## V.     **Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 23rd day of February 2011.

/s/ J. Marschewski
HON. JAMES R. MARSCHEWSKI
CHIEF U.S. MAGISTRATE JUDGE